| | |
|---|---|
| JAMES R. HOLDER, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 1:08-CV-25 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| HOWARD CARLTON, Warden ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |

# MEMORANDUM

James R. Holder ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss and Petitioner filed a response. Having reviewing the record and applicable law, the Court will **GRANT** the motion to dismiss (Court File No. 6). The § 2254 petition is without merit, and it will be **DISMISSED**.[1]

## I. STANDARD OF REVIEW

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the

---

[1] Respondent also moved for an extension of its deadline to file a response. The Court **GRANTS** this motion (Court File No. 5).

case as justice dictates. After carefully reviewing the required materials, the Court finds it unnecessary to hold an evidentiary hearing.

Federal courts review decisions of the state courts pursuant to 28 U.S.C. § 2254(d), which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute generally limits a federal district court's jurisdiction to review habeas corpus claims adjudicated on the merits in the state courts. 28 U.S.C. § 2254(d). In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is contrary to Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Early v. Packer*, 537 U.S. 3, 8 (2002)). "A state-court decision involves an unreasonable application of [the Supreme Court's] clearly established precedents if the state court applies [the Supreme Court's] precedent to the facts in an objectively unreasonable manner." *Brown*, 544 U.S. at 141 (citing *Williams*, 529 U.S. at 405; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

A state court's determination of a factual issue shall be presumed to be correct and the presumption of correctness can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Credibility findings made by state courts are entitled to the presumption of correctness.

2

*Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008); *Ramonez v. Berghuis*, 490 F.3d 482, 486 (6th Cir. 2007).

## II. PROCEDURAL BACKGROUND

Petitioner was convicted on May 2, 1991, of felony murder and conspiracy to take a life. He was sentenced to life in prison for felony murder and a consecutive term of ten years for conspiracy. Petitioner's conviction was affirmed by the Tennessee Court of Criminal Appeals on July 1, 1992, and the Tennessee Supreme Court denied permission to appeal. *State v. Holder*, No. 03C01-9110CR318, 1992 WL 149547 (Tenn. Crim. App. July 1, 1992) [*Holder I*].

In 1995, Petitioner sought post-conviction relief in the Bradley County Criminal Court, which held a hearing in 2003 and dismissed his petition with a written order on September 21, 2005. The Tennessee Court of Criminal Appeals affirmed the dismissal on May 7, 2007, and the Tennessee Supreme Court denied permission to appeal. *Holder v. State*, No. E2005-02456-CCA-R3PC, 2007 WL 1319377 (Tenn. Crim. App. May 07, 2007) [*Holder II*].

Petitioner, acting *pro se*, filed this federal habeas petition in January 2008.

## III. FACTUAL BACKGROUND

The facts underlying the convictions at issue in this case are taken from the opinion of the Court of Criminal Appeals of Tennessee on direct appeal:

> The state's evidence, which was accredited by the jury, shows that on February 18, 1989, Virgil Laughter was killed in Bradley County.
>
> A witness for the state [Kim Angel] testified [Petitioner] was present when he and others pulled Laughter from his truck at the place where the body was found. The witness testified [Petitioner] forced her to get back in the car in which she had

3

Case 1:08-cv-00025-CLC-SKL   Document 11   Filed 03/12/09   Page 3 of 16   PageID #: 130

ridden to the scene. This witness heard a shot but did not see who fired the gun.

There was evidence showing the victim was lured to the scene of the killing as part of a plan to rob him. Another witness [Steve Suits] testified [Petitioner] told him he had done the killing.

Witnesses were produced who testified the deceased had two large rolls of money, which appeared to be one-hundred-dollar bills, on him prior to his death. A witness was called who testified that sometime after Laughter's death, [Petitioner] purchased jewelry and used a $100 bill in payment.

Only one roll of money was found on Laughter's body. This roll consisted of five-dollar bills, ten-dollar bills, and twenty-dollar bills.

*Holder I*, 1992 WL 149547, at *1.

### IV. DISCUSSION

Petitioner contends he is entitled to relief because there was insufficient evidence to support his conviction, the trial court erred in making two rulings, and he received ineffective assistance of counsel at trial and on appeal. The state courts considered and rejected each of Petitioner's claims, and this Court concludes those adjudications are supported by the record and not contrary to or an unreasonable application of clearly-established federal law.

#### A. Sufficiency of the Evidence

Petitioner contends the evidence to convict him of felony murder was too vague and tenuous to support his conviction, especially in light of a key witness's purported recantation. And he contends the evidence was insufficient to convict him of conspiracy because his coconspirator was acquitted. Respondent argues the convictions were supported by sufficient evidence and the witness's memory lapse does not invalidate them.

Under the AEDPA, this Court must determine whether the state court unreasonably applied

4

*Jackson v. Virginia*, 443 U.S. 307 (1979). *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007)). Applying *Jackson v. Virginia* and the AEDPA, the reviewing court must

> determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Tucker*, 541 F.3d at 656 (quoting *Jackson*, 443 U.S. at 318-19). Therefore, "habeas corpus relief is appropriate based on insufficient evidence only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Parker*, 506 F.3d at 448). Thus, there are two levels of deference in a habeas case, first to the trier-of-fact's verdict, as contemplated by *Jackson*, and second to the state court's consideration of the verdict, as dictated by the AEDPA. *Id.* (quoting *Parker*, 506 F.3d at 448).

"Where we consider the [trier-of-fact's] verdict, we do so 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Id.* (quoting *Parker*, 506 F.3d at 448). At the time of the killing, a person could be guilty of first-degree murder for committing a murder in perpetration of, or attempted perpetration of, a robbery. Tenn. Code Ann. § 39-2-202 (1988). The state court concluded the evidence was sufficient to support findings of both felony murder and conspiracy.

In support of this conclusion, Respondent points to the state appellate court's description of the evidence as well as additional evidence in the record. Construed in the light most favorable to

5

the prosecution, the evidence shows Petitioner was part of a group that pulled Laughter from his truck at the place where his body was later found. Laughter had been lured to the scene to rob him, and Petitioner and others had started beating Laughter. Laughter was shot in the head and shoulder at close range. Petitioner told a witness he killed Laughter. On the day of the killing, Laughter was carrying two rolls of money, one of which contained one-hundred-dollar bills. After his death, police found only smaller bills on his body. That same day, Petitioner showed a witness a roll of one-hundred-dollar bills, and he purchased gold earrings, which he paid for with one-hundred-dollar bills. In the days following Laughter's death, Petitioner loaned a woman three one-hundred-dollar bills. From this evidence, a rational trier-of-fact could conclude Petitioner was guilty of felony murder for murdering Laughter in perpetration of a robbery and of conspiring to take Laughter's life. Therefore, the state court's adjudication of this claim satisfies *Jackson*.

Petitioner argues the trial testimony of Kim Angel should be invalidated because of her testimony at a post-conviction hearing in 2003 that she has no memory of her trial testimony 12 years earlier. At the post-conviction hearing, she testified she used a lot of drugs during the relevant time period, and now has no memory of Petitioner, Laughter's death, or her testimony at his trial. She acknowledged there was a "possibility" she wrongly accused Petitioner, but she also testified she did not lie and does not recall testifying. The trial court, in ruling on Petitioner's post-conviction petitioner, denied relief. The state appellate court affirmed:

> The trial court . . . accredited Ms. Angel's testimony that she did not have sufficient recollection to know whether she testified falsely at the petitioner's trial. Upon review, we hold that the evidence does not preponderate against the trial court's findings.

*Holder II*, 2007 WL 1319377, at *17.

Angel's testimony at the post-conviction hearing, which was credited by the state trial court,

6

was not a recantation of her trial testimony. Given Angel's testimony that she could not remember anything about the trial, the trial court's determination she had not recanted was not unreasonable.

Petitioner also challenges his conspiracy conviction because he was indicted for conspiring with Charles Moats. At their joint trial, Moats was acquitted. On direct appeal, the state appellate court held there was sufficient evidence Petitioner "conspired with another." *Holder I*, 1992 WL 149547, at *1. Petitioner argues he cannot be convicted of conspiracy because Moats—the only alleged coconspirator—was acquitted. Respondent argues it was permissible to convict Petitioner of conspiracy where other unnamed persons were involved in the conspiracy.

On this point, the law used to favor Petitioner. *E.g.*, *United States v. Williams*, 503 F.2d 50, 54 (6th Cir. 1974) ("Where all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not be upheld."). But the law has changed. The Supreme Court has held inconsistent jury verdicts are permissible. *United States v. Powell*, 469 U.S. 57, 68-69 (1984). As a result of *Powell*, "the acquittal of all but one co-conspirator during the same trial does not necessarily indicate that the jury found no agreement to act." *United States v. Crayton*, 357 F.3d 560, 565 (6th Cir. 2004). Petitioner correctly argues *Powell* is not directly on point because it concerned inconsistent verdicts against a single defendant, not against multiple defendants in a conspiracy case. But the Sixth Circuit's interpretation of *Powell* in *Crayton* is on point. *See Crayton*, 357 F.3d at 566 ("The reasoning of *Powell* applies to co-conspirator cases even though *Powell* itself did not involve co-conspirators."). *Crayton* shows it was not unreasonable for the state appellate court to conclude Petitioner was guilty of "conspir[ing] with another" even though the only identified coconspirator was acquitted.

### B.    Trial Court Rulings

Petitioner alleges two of the state trial court's rulings violated his constitutional rights. He contends the jury should not have been allowed to rehear the testimony of Steve Suits and the jury should not have been shown two photographs of the victim.

Petitioner argues the trial court emphasized Suits's testimony by allowing the jury to rehear it. As Respondent points out, Petitioner does not identify any Supreme Court rulings that prohibit allowing a jury to rehear testimony it asks to rehear. The record shows the jury asked to rehear Suits's testimony. Over the objection of Petitioner's trial counsel, the trial court had the court reporter read the entire testimony to the jury, including both direct- and cross-examination. On direct appeal, the state appellate court rejected Petitioner's assignment of error, concluding the trial court did not overemphasizing Suits's testimony because it was the jury who wished to rehear the evidence. *Holder I*, 1992 WL 149547, at *1-2. Neither party nor the Court has identified any Supreme Court precedent that would render the trial court's actions unlawful. It is worth noting that in federal courts, judges have discretion over whether juries can rehear testimony, and there is less concern rehearing testimony when a jury requests it and the entire testimony is read, as in this case. *E.g.*, *United States v. Richard*, 504 F.3d 1109, 1115 (9th Cir. 2007); *United States v. Escotto*, 121 F.3d 81, 84 (2d Cir. 1997); *United States v. Akitoye*, 923 F.2d 221, 226 (1st Cir. 1991).

Nor is there any Supreme Court precedent casting doubt on Petitioner's contention the trial court should not have admitted two photographs of Laughter's body. The state appellate court explained:

> The medical examiner who testified in this case testified that two photographs, which were offered into evidence, would supplement the description of the wounds found on the body of the victim. The trial judge allowed the pictures because of this testimony and found their probative value outweighed any prejudicial effect.
>
> The admissibility of photographs is within the discretion of the trial judge after

8

weighing probative value vis-a-vis prejudicial effect, and unless there is a clear abuse of this discretion shown in the record, this Court will not overturn the judgment of the trial court.

*Holder I*, 1992 WL 149547, at *2.

Petitioner contends the photographs were relevant to intent, which he contends was not a relevant issue because he was tried under a felony murder theory, which does not require intent. However, any purported error in the admissibility of the phonographs does not warrant relief. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial. *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) (citing *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)). The photographs were relevant to showing that Laughter was dead and how he died. The admission of the photographs did not prevent Petitioner from receiving a fair trial.

### C. Ineffective Assistance of Counsel

Petitioner contends his inexperienced trial and appellate counsel provided ineffective assistance of counsel by conducting an inadequate pretrial investigation and performing deficiently at trial and on appeal. Respondent contends Petitioner has not identified how the state decision rejecting his ineffective assistance claim was contrary to or an unreasonable application of clearly established federal law.

The state courts concluded Petitioner failed to meet the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. To establish ineffective assistance of counsel, Petitioner must show not only that his attorney's representation fell below the standard of

9

competence demanded of attorneys in criminal cases but also that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88.

To demonstrate a deficiency in representation, Petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Then, he must plead and prove that his attorney's deficient performance prejudiced the defense. *Id.* "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id.* at 691.

Petitioner contends counsel consulted with him only twice prior to trial. In the state habeas proceeding, the appellate court noted the evidence on the number of pretrial consultations was "sharply conflicting." *Holder II*, 2007 WL 1319377, at *12. Despite discrepancies between trial counsel's fee claim and a post-trial confidential memorandum he prepared, it was apparent to the state appellate court "that the trial court accredited the evidence that counsel met with the petitioner numerous times and consulted with him about the evidence." *Id.* at *13. Because Petitioner is unable to rebut this finding by clear and convincing evidence, the state court's factual finding stands, and the Court concludes trial counsel's pretrial consultation with Petitioner was not deficient.

In addition to not consulting with Petitioner, Petitioner contends trial counsel's pretrial investigation was inadequate. He contends counsel did not investigate whether other individuals

10

had the motive, opportunity, and ability to kill Laughter; did not investigate and develop impeachment evidence against Steve Suits; failed to adequately investigate potential witnesses who would have impeached Kim Angel's testimony; failed to interview and prepare for Angel's cross-examination; and failed to interview potential defense witnesses. The post-conviction appellate court reviewed each of Petitioner's claims and found them to be without merit based on the evidence credited by the trial court at its evidentiary hearing. For each allegation, Petitioner contends the state court's decision was contrary to or an unreasonable application of the clearly-established federal law or was based on an unreasonable determination of the facts. But in each instance the facts are supported by the record and the state court made a permissible determination.

Petitioner's claim trial counsel failed to locate other potential suspects and witnesses does not warrant relief. The trial evidence showed multiple people were involved in robbing or killing Laughter, so the possibility of other suspects would not necessarily exonerate Petitioner. Some of the witnesses Petitioner contends should have been called were not called by his trial counsel because of counsel's deliberate choice based on the potentially damaging information those witnesses would provide. Trial counsel also chose not to establish an alibi because he was concerned about perjured testimony. And trial counsel did not call Debra Gibson as a witness because he decided to let the jury speculate on evidence that she had killed Laughter. These findings were made by the state court and are supported by the record.[2]

Looking back at the choices Petitioner's trial counsel made, it is easy to see how in retrospect

---

[2]There is one potential witness, George Watson, who trial counsel acknowledged he did not investigate because he assumed the witness would not have been beneficial to Petitioner's case. But Petitioner does not make any argument based on counsel's failure to investigate Watson and there is no indication of any prejudice resulting from this failure.

11

Petitioner finds them faulty. Hindsight is twenty-twenty but not relevant:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 689). Trial counsel's credited testimony shows he exercised his professional judgment in interviewing potential witnesses and deciding how to cross-examine them and whether to call them as defense witnesses.

Despite any flaws in trial counsel's preparation, the record shows an extensive cross-examination of Suits. In his testimony, Suits admitted to having prior felony convictions and of Petitioner having shot at his house. He acknowledge having an affair with the woman who later became Petitioner's wife. Trial counsel showed that Suits had lied to the police, although Suits denied it. Suits also admitted to using illegal drugs and threatening Laughter. The record supports the state court's conclusion that trial counsel's decision not to challenge evidence Petitioner shot through Suits's house was a calculated decision to show bias by Suits. *See Holder II*, 2007 WL 1319377, at *15.

Similarly, trial counsel interviewed Angel and assessed her as lacking credibility. He made a calculated decision to not emphasize her testimony and to not challenge her testimony with two other witnesses who had their own credibility issues. *See Holder II*, 2007 WL 1319377, at *16-17. Although Angel's status as a witness did not become apparent until shortly before trial, counsel had

12

an opportunity to interview and assess Angel and counsel made a decision to not seek a continuance for fear that more witnesses beneficial to the state would turn up.

At the state court post-conviction hearing, there was much dispute as to what actions Petitioner's trial counsel took on his behalf. To some extent, trial counsel's testimony was undermined by his fee petition. But the state post-conviction court credited trial counsel's testimony, apparently accepting counsel's explanation that he did not bill the state for all his time and expenses because handling fee petitions was a new and uncertain experience for him. Counsel had not dealt with fee petitions in his previous employment, and his actions in this case, though admitted to be foolish, are not so unbelievable that this Court can set aside the state post-conviction court's decision to credit counsel's testimony.

Overall, the record shows that the main witnesses against Petitioner—Suits and Angel—had serious flaws. These flaws were apparent from the direct and cross examinations of the two witnesses. Trial counsel also investigated other witnesses but decided against calling them for various legitimate reasons. In short, Petitioner's trial counsel's performance was not deficient. The jury, faced with credibility decisions, chose to credit the testimony showing Petitioner's guilt. This decision was buttressed by evidence showing Petitioner had hundred-dollar bills that likely came from Laughter.

Finally, the Court turns to Petitioner's claim he received ineffective assistance of counsel on appeal, a claim which rests on a disturbing admission by Petitioner's counsel. Petitioner's trial counsel also represented him on appeal, but "represented" is perhaps too strong a word. Counsel admitted at the state post-conviction hearing that Petitioner and a jailhouse lawyer wrote the appellate brief. Petitioner sent the brief to his counsel. Counsel attached a cover sheet with his

13

name on it and then submitted the brief to the appellate court. Counsel testified there was little, if any, variance between what Petitioner submitted to him and what he filed. Counsel did no research because he thought the brief Petitioner submitted "was done fairly well." The post-conviction appellate court easily concluded counsel's performance on appeal was deficient. *Holder II*, 2007 WL 1319377, at *19.

But the prejudice prong of *Strickland* also applies to ineffective assistance of counsel on appeal. Therefore, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 694). The state post-conviction appellate court concluded there was no prejudice. And in this proceeding, Petitioner does not point to any prejudice. The state court appointed counsel for Petitioner in his post-conviction proceeding, and Petitioner has been unable to identify any prejudice resulting from Petitioner's original counsel's deficiency.

At the state post-conviction hearing, there was some discussion of how Petitioner's direct appeal did not challenge whether Petitioner could be convicted of conspiracy despite his coconspirator's acquittal. There was no discussion of this issue in Petitioner's appellate brief, although the brief did challenge the sufficiency of the evidence of both convictions. The law is now clear in federal court in this circuit that a coconspirator's acquittal does not invalidate another coconspirator's conviction. *See Crayton*, 357 F.3d at 566. Although the Court cannot find any Tennessee caselaw precisely concerning inconsistent verdicts where only one coconspirator is convicted, the Tennessee courts have long allowed inconsistent verdicts. *Wiggins v. State*, 498 S.W.2d 92, 93 (Tenn. 1973); *State v. Gaston*, 2003 Tenn. Crim. App. LEXIS 92, *40 (Tenn. Crim.

14

App. Feb. 7, 2003); *State v. Ortiz*, 1998 Tenn. Crim. App. LEXIS 418, *13 (Tenn. Crim. App. Mar. 31, 1998); *State v. Gober*, 1989 Tenn. Crim. App. LEXIS 792, *6 (Tenn. Crim. App. Nov. 14, 1989); *State v. Gautney*, 607 S.W.2d 907, 909 (Tenn. Crim. App. 1980). Given this longstanding consistent caselaw, there is not a reasonable probability Petitioner would have succeeded on that issue on direct appeal if counsel had raised it. Accordingly, he suffered no prejudice.

Prejudice cannot be presumed. This was not a situation where Petitioner was completely denied the right to counsel, as in *Penson v. Ohio*, 488 U.S. 75 (1988). *Penson* distinguished between cases where a defendant is entirely without the assistance of counsel and cases where an attorney fails to argue an issue effectively or to press a particular argument. *Id.* at 88. Prejudice is presumed in the former situation but not in the latter situations. *See also United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either *totally absent*, or *prevented from assisting* the accused during a critical stage of the proceeding.") (emphasis added). The evidence here shows Petitioner's counsel did review the appellate brief and "thought it was done fairly well." The brief itself is in the record, and it is well-written and indistinguishable on its face from a brief written by an attorney. Counsel was therefore not totally absent or prevented from assisting in Petitioner's appeal. The record shows he chose not to do any further work on the case, which, as noted earlier, was deficient performance but did not cause prejudice.

### V.     CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion to dismiss (Court File No. 6). The § 2254 petition is without merit, and it will be **DISMISSED**.

15

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**